[Crim. No. 2162. Second Appellate District, Division One.—February 15, 1932.]

THE PEOPLE, Respondent, v. EDWARD A. JAGGERS, Appellant.

MacDonald & Thompson for Appellant.

U. S. Webb, Attorney-General, and Lionel Browne, Deputy Attorney-General, for Respondent.

TAPPAAN, J., *pro tem.*—Appellant and one Weirick were accused in an information filed by the district attorney with having committed the crime of robbery. Both defendants named in the information pleaded "not guilty", but at the time the cause was called for trial defendant Weirick withdrew his plea of "not guilty" and entered a plea of "guilty". Appellant was then placed upon trial alone, a trial was had, and a verdict of robbery in the first degree was duly returned by the jury.

Appellant's first specification of error is that the evidence was insufficient to justify the verdict of the jury. Appellant admits having driven defendant Weirick and one O'Grady to the drug-store where the robbery was committed. He likewise admitted having remained outside the store, seated in his car, during the time that Weirick and O'Grady were actually committing the robbery, and having driven Weirick and O'Grady from the scene of the crime following its commission. Appellant contends that he did not know that it was the intention of Weirick and O'Grady to commit the robbery, and that there is no evidence to support an inference that he knowingly aided or assisted them in the perpetration of the robbery with knowledge of the wrongful intention.

The record here discloses that appellant, Weirick, O'Grady and a number of other persons, on the night that the robbery was committed, attended a so-called party; that there was drinking and gambling on the part of some of the persons present at the party, and that, at about the hour of 9:30 in the evening, appellant left the party in his car with Weirick and O'Grady, ostensibly to secure liquor for the party, and that the robbery took place at approximately 10 o'clock in the evening. The evidence shows that appellant parked his car on the street at the side of the drug-store and on the wrong side of the street. The car with an occupant was here observed by one of the witnesses for the People, who stated that when the lights from his car were turned upon appellant's car, the occupant "put his hand up to his face". This same witness also testified that he observed the occupant of the car through his rear view mirror "turn around and look at" him. There seems to be no question but that appellant was the occupant of the car. After the robbery, appellant together with Weirick

and O'Grady returned in appellant's car to the party and again engaged in gambling. Appellant—called as a witness in his own behalf—denied that he knew of the robbery, but admitted driving the car to the drug-store with Weirick and O'Grady and driving them back to the party. Appellant's statement that he did not know that a crime was to be committed is not sufficient to constitute irrebuttable proof of such fact. "Few criminals would ever be convicted if their explanations were accepted as gospel truth." (*People* v. *Hall*, 87 Cal. App. 634 [262 Pac. 50].)

In the case of *People* v. *Wilson*, 93 Cal. App. 632 [269 Pac. 951, 953], where the facts were somewhat similar to those in this case, the court said: " . . . and the contention appellant makes regarding the evidence is that even assuming that she was present at the time and place of the robbery, there was no proof introduced to establish the fact that she aided and abetted in the commission of the crime. We are unable to agree with this contention, for it is well settled that the question of whether or not a person who is shown to have been present at the time and place of the commission of a crime has aided and abetted therein is one of fact for the jury to decide from all the circumstances proved (*People* v. *Woodward*, 45 Cal. 293 [13 Am. Rep. 176]; *People* v. *Kauffman*, 152 Cal. 331 [92 Pac. 861]; *People* v. *Wilson*, 135 Cal. 331 [67 Pac. 322]); and in our opinion the circumstances hereinabove narrated are legally sufficient to warrant the conclusion that appellant had previous knowledge of what was about to transpire and that her object in being present was to divert any suspicion as to their purpose, or to serve as a lookout and to give warning of the approach of anyone seeking to interfere with their enterprise, or to take charge of the automobile, keep the engine running, and to give direct aid to the men in making their escape. Any one of the purposes mentioned would be sufficient upon which to base the reasonable inference that she was aiding and abetting in the commission of the robbery."

In the case of *People* v. *Moe*, 116 Cal. App. 740 [4 Pac. (2d) 234, 237] (on rehearing), where the appellant in that case was not admittedly in the car, as he was here, the court makes this comment: "If all the circumstances do not make this proof then it is impossible to prove anything by

circumstantial evidence and that kind of evidence merely enables jurors to draw inferences. We have never heard it said that circumstantial evidence is so limited in its operation.''

The evidence presented to the jury was sufficient to sustain the verdict rendered as against appellant.

. ■ Appellant's one other specification of error relates to the overruling of his objection to the testimony of one Howsley, and permitting him to impeach the testimony of Weirick, a witness for the prosecution. Weirick was called as a witness by the prosecution, and after stating, in answer to a question asked of him by the deputy district attorney, that he had pleaded guilty to the robbery here involved, and had had no previous conversations with the deputy district attorney, he was questioned as to the money secured by the robbery, and testified as follows: ''Q. I mean, about how much cash. A. There was something like $300.00. Q. What was done with the money, did you split it? A. No, Jaggers didn't get any. Q. Jaggers didn't get any? A. No, sir. Q. Well, I will ask you if, when you were coming back, you didn't tell the officer that the three of you split it. Mr. MacDonald: We object to that on the ground that it is impeachment of his own witness. The Court: Overruled.'' The witness was then asked questions establishing the grounds for his impeachment (sec. 2052, Code Civ. Proc.) and was then asked if he told the officer on the occasion specified that the three of them talked over the matter of the robbery in the automobile, before they went to the drug-store. This he also denied. The officer Howsley was then called as a witness, and was permitted to testify over appellant's objection to the conversation referred to, and to directly impeach the witness Weirick. The court, in overruling appellant's objection, admonished the jury that the testimony of the witness was admitted for the sole purpose of impeachment. Section 2049 of the Code of Civil Procedure provides: ''The party producing a witness is not allowed to impeach his credit by evidence of bad character, but he may contradict him by other evidence, and may also show that he has made at other times statements inconsistent with his present testimony, as provided in section two thousand and fifty-two.'' ■ Under the provisions of this section, the rule is well established that to entitle a party to

contradict his own witness by showing statements elsewhere made and contrary to those made upon the witness-stand, it must appear not only that the party was surprised by the testimony of the witness, but that such testimony was prejudicial to the case of the party calling the witness.

"Therefore, the mere failure of a witness to testify favorably for the party calling him, unaccompanied by any testimony which would tend to the prejudice of the case of the party calling the witness, will not entitle such party to show that the witness has elsewhere made contrary statements concerning the facts sought to be elicited from him." (*People* v. *Sliscovich*, 193 Cal. 544, 554 [226 Pac. 611, 615].)

The question squarely presented by the record is, did the answers of the witness constitute testimony prejudical to the People's case, or were they merely a failure on his part to state facts expected by the prosecuting attorney? The circumstances under which the questions were asked and the answers given are controlling on this issue. The witness, who was jointly accused of the crime with the appellant, had just acknowledged his guilt. He was present with appellant at the scene of the crime and had actual knowledge of all the circumstances. The theory of appellant's defense was that, while admitting that he drove the witness and O'Grady to the drug-store, waited while they went in and committed the robbery, and then drove them away from the store, he had no knowledge of their design nor that a robbery had in fact been committed by them. The answers as given by the witness directly supported the defense as advanced by appellant. It is obvious that the answers given by the witness were prejudicial to the case of the People.

In *People* v. *Creeks*, 141 Cal. 529, 532 [75 Pac. 101, 103], the court said: "Upon this subject, this court has never gone further than to hold that where a witness called by a party has given damaging testimony against him—as, for instance, if the mother had here affirmatively testified that defendant did *not* wear the shoes when he left her home— the party calling him may show that the witness previously made statements inconsistent with his present testimony, and this ruling is apparently upon the theory that the party was surprised by the adverse testimony given by his own witness."

The same principle is stated in the case of *People* v. *Cook*, 148 Cal. 334, 345 [83 Pac. 43, 48], where it is said: "The case is not affected by the qualification which this court has from the beginning imposed upon the general language of sections 2049 and 2052 of the Code of Civil Procedure. The witness in this case did not simply fail to give favorable testimony for the state. Upon the point at issue her testimony was positive against the state. This court has in a number of cases held, and I have no doubt correctly held, that the mere failure of a witness to give favorable testimony for the party producing him does not entitle such party to prove that he has made contrary statements elsewhere (*People* v. *Creeks*, 141 Cal. 532 [75 Pac. 101], and cases cited). But it has gone no further in qualifying the language of the statute." From the fact that the witness' testimony was of a damaging nature to the People's case, the surprise referred to in the cases is clearly indicated. Surprise, in the abstract, is but a condition of mind, and is only manifest to others by some physical disturbance affecting the person surprised. The record here makes no mention of the physical circumstances surrounding the giving of the witness' testimony. The trial court heard the testimony given, and, it must be assumed, exercised a reasonable discretion when it overruled appellant's objection to the testimony. The evidence introduced by the People, aside from that which was here questioned, was of such a clear and convincing nature that the jury was more than justified in their verdict. If error was committed in asking the questions asked, it was not error of such a nature, considered with all of the other evidence, as would justify a reversal of the judgment.

For the reasons above stated the order and judgment appealed from are affirmed.

Conrey, P. J., and York, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on February 29, 1932, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 14, 1932.

Langdon, J., dissented.